### MORSE *v.* VELZY.

1. FRAUDULENT CONVEYANCES—KNOWLEDGE OF GRANTEE—FINDINGS OF FACT—JUDGMENT.

Where, in replevin against an officer for property seized on execution against a third person, and claimed by plaintiff to have been turned over to her by the execution debtor in satisfaction of a note, the court found as a fact that plaintiff had no knowledge that the vendor owed any debts aside from the note, a judgment for defendant, on the theory that plaintiff took the property with intent to defraud the vendor's creditors, was unwarranted.

2. SAME—CHANGE OF POSSESSION—EVIDENCE.

Where, in replevin against an officer for property seized on execution against a third person, and claimed by plaintiff to have been turned over to her by the execution debtor in satisfaction of a note, the evidence showed that plaintiff, at the maturity of the note, was given a bill of sale of the property; that at that time, or soon afterwards, she purchased from the debtor the farm on which the property was located, and placed a third person in charge for her; and that, after several months, she removed the property to the farm on which she lived, where the debtor was employed by her, and where he remained up to the time of the levy,—a finding that there was no change of possession which would avail against other creditors was erroneous.

Error to Kent; Adsit, J.   Submitted February 7, 1900. Decided March 27, 1900.

Replevin by Sarah J. Morse against Milton Velzy. From a judgment for defendant, plaintiff brings error. Reversed.

*Taggart, Ganson & Taggart*, for appellant.

*C. H. Gleason* (*Arthur Lowell*, of counsel), for appellee.

GRANT, J.   Defendant is a deputy sheriff.   Under an execution issued upon a judgment in justice's court for $73.51 against one John Brown, he levied upon two mares and a colt, which are the subject of this controversy. Plaintiff, claiming to be the owner, replevied them. Plaintiff purchased the property from Brown, and had it in her possession when the levy was made.   The judgment creditors, through the defendant, attacked the purchase as fraudulent and made with the intent to defraud the creditors of Brown.   The court made an elaborate finding, covering eight pages of the record, in which is set forth much of the testimony and the claims of the parties.   Plaintiff objected and excepted to the finding of the facts which were material and essential for the defendant to establish.   She also proposed amendments of facts directly contrary to those found, to the refusal to find which she duly excepted.   The main contention is that there was no testimony upon which to base the finding that the sale was fraudulent.

The undisputed facts are that plaintiff owned a farm, on which she lived with her husband.   Brown owned a farm of 40 acres near by.   He had ceased to occupy it as his homestead.   Upon it were these mares and other personal property, worth together about $250.   In August, 1896, she loaned Brown $250, and took his promissory note therefor, due in August, 1897.   When the note became due, Brown was unable to pay.   This property was

then, by mutual agreement, turned over to plaintiff in payment of the debt, and the note surrendered. Plaintiff about the same time purchased Brown's farm, but whether at the time or afterwards is not shown by the record. One Tibbitts took possession of the Brown farm under plaintiff, and the mares remained upon that farm until the following spring. They were then removed to plaintiff's farm, and there remained until levied upon by defendant, January 3, 1899. Brown meanwhile was employed by plaintiff to work on her farm,—at first by the month; and afterwards, being unable to work constantly, he was paid for what he did. Aside from the parol evidence, a bill of sale, absolute in form, was executed by Brown and delivered to plaintiff at the same time that the note was surrendered.

The court declined to find whether plaintiff loaned Brown $250, took his promissory note therefor, and surrendered it to him in consideration for the bill of sale and the conveyance of the property therein enumerated. These were essential facts, and the court should have passed upon them. If they were as claimed by the plaintiff, and if she had no knowledge that Brown was indebted to others than herself, she certainly could not be convicted of any fraudulent intent. Even if she had known that Brown owed other debts, this would not have rendered her purchase void, though the result would have been to hinder and delay other creditors. The court found that she "had no knowledge that said Brown was financially involved, or owed any debts aside from her own." By what process of reasoning can she be held guilty of an intent to assist Brown to defraud his creditors, when she did not know that he had any? The court could not have found that no money was loaned, or note given and surrendered, without finding that plaintiff, Brown, and a disinterested witness, Mrs. Martindale, were guilty of perjury. Plaintiff and Brown both positively swear to the transaction, and Mrs. Martindale testified that she was present, and saw and read the note, when plaintiff

surrendered it to Brown. I find no testimony in the record to impeach the integrity of the transaction, or to justify the conclusion that these three witnesses were guilty of perjury.

The employment of Brown by the plaintiff was no justification for the finding that there had been no change of possession or ownership. The mares were just as much in her possession as though they had been purchased from a person other than Brown.

Judgment reversed, and new trial ordered.

The other Justices concurred.